In re Frank X. MATTES.

No. 52080.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1966.

D. Jeff Lance, Frederick H. Mayer, St. Louis, for informants.

Winston Cook, Jefferson City, and Robert Nagel Jones, St. Louis, for respondent.

HOLMAN, Judge.

The Advisory Committee of the Missouri Bar (hereinafter referred to as "Informants") instituted this proceeding by the filing of an information in this court. Therein, in eleven separate counts, they charged Frank X. Mattes (hereinafter called respondent) with professional misconduct and sought an order removing him from the practice of law in this state. Respondent is a duly licensed attorney in this state and maintains offices in both Kansas City and St. Louis.

In due course respondent filed an answer denying the charges made in the information. Thereafter, on May 10, 1966, respondent filed a pleading which we set out in full, as follows:

"Comes now Respondent, Frank X. Mattes and herewith requests leave of Court to withdraw his Answer filed herein and to submit himself to this Honorable Court for such action as the Court may deem appropriate in the premises.

"Petitioner will not further contest this proceeding and begs that the Court will consider the following:

"In his early life, your Petitioner was an only son of a widowed mother and after some three years at the University of Missouri, was unable to support her and complete his formal education. He began his legal training by reading law in the office of the late Thomas P. Burns of Brookfield, Missouri, and was admitted to the Missouri Bar on May 30, 1936, and to the Federal Bar in the Eastern District of Missouri shortly thereafter.

"Your Petitioner is fifty-four years of age, married, and has a dependent wife and four minor children. His entire adult life has been devoted exclusively to the practice of law, and he has neither the training nor necessary condition of health to engage in any other field of endeavor.

"Your Petitioner profoundly regrets the circumstances which have placed him before this tribunal for discipline and begs that this Honorable Court will consider his circumstances and long practice of the law in determining the action which the Court deems appropriate herein. Petitioner believes, and humbly suggests to the Court, that the conduct charged by your Advisory Committee does not require the extreme penalty of disbarment in protecting the public interest.

"Petitioner has cooperated with your Advisory Committee in every respect in connection with the matters entrusted to said Committee and herewith submits himself to the Supreme Court of Missouri for such action as the Court may deem appropriate in the premises."

In response to the foregoing, informants filed a "Motion for Disciplinary Orders and Judgments" which reviewed the state of the pleadings and concluded with the suggestion that "No issue of fact or law remains in this proceeding since Respondent has withdrawn all pleadings heretofore filed by him. Consequently, this matter now is before the Court for entry of appropriate orders and judgments." At this point it would have been permissible for us to have entered an appropriate judgment without further proceedings. We concluded, however, that the case should be briefed and argued and hence we entered the following order: "Respondent's petition to withdraw answer and to submit cause sustained.

Cause ordered docketed at the September Term, 1966." Each side has since briefed and argued the matter and it is now before us for final disposition.

In contested disbarment cases we usually appoint a special commissioner to hold hearings and report his findings of fact and conclusions of law. In view of the pleading filed by respondent we have not appointed a commissioner in this case. The informants have, however, filed in this court the transcript of the hearings held in investigating the conduct of respondent.

In the situation presented, we see no need to set out the charges in detail. Several charges relate to conduct which occurred prior to 1955. Those include: (1) The solicitation of the personal injury claim of Robert J. Cunningham against the "Frisco" Railroad in 1947. It is also charged that, as an inducement for his employment, respondent agreed to pay Cunningham $125 per month as living expenses until the claim might be finally settled. (2) The solicitation in 1952 of the claim of Henry Brondi against the C. B. & Q. Railroad Company for injuries sustained while employed as an extra gang laborer; and (3) the solicitation in 1953 of the claim of Robert R. Moss against the Santa Fe Railroad for personal injuries received while working as a brakeman for said railroad.

The informants held a number of hearings in 1955 investigating the professional conduct of respondent in regard to the aforementioned charges and others. No action was taken at that time, however, and, as stated in the information, "upon the plea of accused and request to the Committee it did strike the matter from its active docket reserving the right to reinstate such charges should any further misconduct or complaint come to the attention of the Committee."

Other charges involving occurrences subsequent to 1955 were that respondent, acting personally and through laymen, "did seek out and solicit" personal injury claims (against various railroads) from Henry M.

Bird in 1960, Jerome L. Fleming in 1961, and Norman John Smith and Charles Leslie Wright in 1962. It was also alleged that respondent was employed by James F. Wisdom to represent him in handling his claim for personal injuries against the Wabash Railroad; that the claim was settled for $10,134 but that respondent failed to pay his client the full amount due him until after Wisdom had consulted another attorney and had threatened to report the matter to the "State [Bar] Committee."

There was also an allegation that respondent made an arrangement with four laymen to seek out persons injured and endeavor to secure them as clients of respondent in the handling of their claims. It was further alleged that David Page was employed by respondent in 1964 at a salary of $250 per month to contact various officers of the Brotherhood of Railway Trainmen in an effort to get respondent placed upon the list of approved attorneys for the handling of claims of its members. Another count contained the averment that respondent had falsely represented to injured members of the Maintenance of Way Union that he was an attorney for that union with the result that the president thereof, in March 1964, issued a circular advising the membership that respondent was not authorized to represent the union or to handle the cases of the members who had been injured in railroad employment.

■ Respondent's brief is devoted entirely to a discussion of the facts shown by the transcript filed herein. As to each charge he has pointed to facts which tend to explain his conduct and in some instances to cast doubt upon his guilt. However, in view of the pleading filed by respondent on May 10, 1966, we consider the allegations in the information to be true and conclude that respondent is guilty of professional misconduct and that he has violated various rules of this court, including S.Ct. Rules 4.11 and 4.28, V.A.M.R. As hereinafter indicated, we have, however, taken into consideration certain evidence which tends

to explain and extenuate respondent's conduct.

We now consider the disciplinary action to be taken in this case. "The main purpose of a proceeding of this nature is to make an inquiry into the fitness of an attorney to continue in the practice of law. Its main objective is not to punish the attorney but the protection of the public and the maintenance of the integrity of the profession and of the courts. The subject has been considered so often that we deem it sufficient to make reference to a number of cases and authorities and so shall not discuss the subject at length. See In re Conner, 357 Mo. 270, 207 S.W.2d 492, loc. cit. 498, 499 (13) (14, 15); In re Speiser, Mo.App., 294 S.W.2d 656, loc. cit. 665(4, 5); In re McLendon, Mo., 337 S.W.2d 56, loc. cit. 61(2); In re Moon, Mo., 310 S.W.2d 935, loc. cit. 938, 939(3); * * * 7 C.J.S. Attorney and Client § 28, pp. 770–774." In re Randolph, Mo.Sup., 347 S.W.2d 91, 109.

It is our conclusion that the charges in this case and the facts developed in regard thereto do not justify the penalty of disbarment. We mention some of the extenuating circumstances. In every instance the persons who contacted injured employees in respondent's behalf were former clients of respondent or friends of long standing and there is no contention that respondent compensated or agreed to compensate said persons for their assistance. In regard to the charge that respondent failed to promptly pay Mr. Wisdom the full amount due him, we note that there was some evidence tending to indicate that a dispute existed between respondent and Wisdom as to the amount due. As to the charge that respondent falsely represented that he was an approved attorney for the Maintenance of Way employees, there was evidence that his name had formerly been on their approved list and that he may not have known that it had been removed until the president issued the circular heretofore mentioned. We have also considered respondent's attitude toward the investigation conducted by informants. Such is described in informant's brief as follows: "Although respondent personally and by counsel conducted a vigorous defense against the various charges, as he had a right to do, and was successful as to some of them, he met the various charges, issues, and disputes with commendable directness and promptness. He submitted himself to cross-examination as to each charge; and, as far as the record indicates, he did not evade a direct answer to any question." The ends of justice will be served by disciplinary action less than complete disbarment.

It is ordered that the respondent, Frank X. Mattes, be suspended indefinitely from the practice of law with leave to apply for reinstatement after the expiration of a period of three years from the date of the rendition of this opinion upon a showing that he is then a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri.

All concur except EAGER, J., who dissents in separate dissenting opinion filed.

EAGER, Judge (dissenting).

I feel that the offenses and infractions of the Respondent are treated too lightly in the majority opinion, particularly with regard to the supposed explanatory and extenuating circumstances, and that the discipline imposed is insufficient. In my view the Respondent should be permanently disbarred from practice, In re Randolph, Mo., 347 S.W.2d 91, or a substantially longer period should run before permitting Respondent to apply for reinstatement.