In re Robert G. DUNCAN, Respondent.

No. 75162.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1992.

Rehearing Denied Feb. 9, 1993.

John E. Howe, Sam S. Phillips, Sedalia, for informant.

John P. O'Connor, R. Michael Gunn, Kansas City, for respondent.

ORIGINAL DISCIPLINARY
PROCEEDING

BENTON, Judge.

On July 28, 1992, Respondent Robert G. Duncan pleaded guilty to two misdemeanors of failure to pay federal income tax for 1988 and 1989. *26 U.S.C. § 7203.* By the plea agreement, the United States dismissed the remaining two counts of failure-to-pay for 1986 and 1987, and agreed not to prosecute him for another tax offense. Respondent and his counsel agreed that if the case had reached trial, the United States "would have proven at least:"

> That Duncan was from 1986 through 1989 engaged in the practice of law, and that he derived taxable income from that activity which he reported to the Internal Revenue Service, and on which he assessed himself the applicable tax on United States Individual Income Tax Returns, Forms 1040, but that he willfully failed to pay those taxes, although he possessed the funds to do so. Duncan and his counsel further and specifically agree that if this case had proceeded to trial, the United States would have proven that the tax due and owing for the calendar years 1988 and 1989 is $36,235.84 and $32,140.94, respectively.

Respondent was sentenced to three years probation; to reside in a halfway house for two months (followed by four months home confinement, all with work release); to perform 400 hours community service; to pay the Internal Revenue Service "all disposable income" and eventually $157,887.14. No imprisonment or fine was imposed; Respondent paid $50 costs.

Citing only Rule 5.20, the Chief Disciplinary Counsel filed an information with this Court, which issued an order to show cause. This Court has original jurisdiction. *Rule 5.*

I.

The Chief Disciplinary Counsel argues that Respondent is subject to discipline because failure to pay income tax is "a misdemeanor involving moral turpitude" within the meaning of Rule 5.20. The Disciplinary

Counsel invokes six precedents that failure to *file* federal income tax returns—also violating 26 U.S.C. § 7203—constitutes moral turpitude. *In re Burrus,* 258 S.W.2d 625, 627 (Mo. banc 1953); *In re Moon,* 310 S.W.2d 935, 936 (Mo. banc 1958); *In re McMullin,* 370 S.W.2d 151, 155 (Mo. banc 1963); *In re Lurkins,* 374 S.W.2d 67, 68 (Mo. banc 1964); *In re MacLeod,* 479 S.W.2d 443, 445 (Mo. banc), *cert. denied,* 409 U.S. 979, 93 S.Ct. 312, 34 L.Ed.2d 243 (1972); *In re Kueter,* 501 S.W.2d 486, 487 (Mo. banc 1973).

Respondent counters that these precedents do not apply because he did file federal income tax returns, and because failure-to-pay differs from failure-to-file. Specifically, Respondent contends that failure-to-file may impute concealment, fraud, and thus moral turpitude, but failure-to-pay does not.

Respondent emphasizes that the Alabama Supreme Court held that failure to pay income taxes in violation of 26 U.S.C. § 7203 is not a crime of moral turpitude, negating any attorney discipline. *Clark v. Alabama State Bar,* 547 So.2d 461, 463 (Ala.1989). The Alabama court states that even failure-to-file does not necessarily involve moral turpitude. *Id.* at 463. The *Clark* decision thus contradicts the Missouri precedents, and the majority of states actually deciding the issue. See *Annot., "Federal Income Tax Conviction as Involving Moral Turpitude Warranting Disciplinary Action Against Attorney,"* 63 A.L.R.3d 476, 495–500 (1975), 66–67 (Supp.1992).

Respondent's main argument—that failure-to-pay is less venal than failure-to-file—is refuted by the language of the federal statute, as oft interpreted by the United States Supreme Court. The mental state required by the statute for failure-to-pay is identical to that for failure-to-file: "willfully." *26 U.S.C. § 7203; United States v. Bishop,* 412 U.S. 346, 354–56, 93 S.Ct. 2008, 2014–15, 36 L.Ed.2d 941

(1973). Most crimes in the Internal Revenue Code—whether misdemeanor or felony—have this same mental state. *Id.* at 356, 93 S.Ct. at 2015. "Willfully" requires "more than a showing of careless disregard for the truth" and "means a voluntary, intentional violation of a known legal duty." *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976).[1] Moreover, a good faith misunderstanding of the law or a good faith belief that one is not violating the law—even if objectively unreasonable or irrational—negates willfulness in tax cases. *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 611, 112 L.Ed.2d 617 (1991).

The parties present the issue as whether such willful failure to pay income tax is a crime of moral turpitude. This Court has long defined moral turpitude as "baseness, vileness, or depravity" or acts "contrary to justice, honesty, modesty or good morals." *In re Frick,* 694 S.W.2d 473, 479 (Mo. banc 1985); *In re Burrus, supra* at 626; *In re McNeese,* 346 Mo. 425, 142 S.W.2d 33, 33–34 (1940); *In re Wallace,* 323 Mo. 203, 19 S.W.2d 625 (1929).

Willful failure to pay federal income taxes is a crime of moral turpitude. Respondent's plea means he was more than careless, and voluntarily and intentionally violated the legal duty to pay taxes. Respondent "willfully failed to pay those [federal income] taxes, although he possessed the funds to do so." It is dishonest not to pay taxes when Respondent knows he owes them and has the capacity to pay. It reflects adversely on Respondent's trustworthiness that he owes "all disposable income" and (at least) $157,887.14 to the United States government, under these circumstances. Public confidence in the Bar cannot be maintained if attorneys may practice, with impunity, after tax convictions. "Almost without exception, the cases [across America] held or recognized that an attorney's conviction of a federal

---

**1.** Respondent emphasizes *Pomponio's* corollary point that "bad faith or evil intent" are not elements of willfulness in tax offenses; Respondent deduces that failure-to-pay is not an act of moral turpitude. Respondent's point proves too

much, because all tax offenses—failure-to-pay, failure-to-file, other misdemeanors, and felonies—have the same mental state. This Court's precedents clearly hold tax offenses to be crimes of moral turpitude.

income tax offense involved non-professional misconduct warranting the imposition of some type of disciplinary action." *Annot., "Federal Income Tax Conviction as Constituting Unprofessional Misconduct Warranting Disciplinary Action Against Attorney,"* 63 A.L.R.3d 512, 514 (1975, Supp.1992).

This Court holds that a conviction of failure to pay income tax is a "misdemeanor involving moral turpitude" under Rule 5.20.

## II.

█ "In cases of this nature, it is always a difficult problem to determine the extent to which an attorney should be disciplined." *In re Moon, supra* at 938. Suspension is the consistent sanction for failure-to-file. *In re Burrus, supra* at 627; *In re Moon, supra* at 939; *In re McMullin, supra* at 156; *In re Lurkins, supra* at 69; *In re MacLeod, supra* at 445; *In re Kueter, supra* at 487.

Respondent graduated law school with distinction, and has practiced for 33 years without prior discipline. Respondent has an excellent reputation as an attorney, having led local, state, and national bar organizations and having written and lectured widely, particularly on criminal law. *Cf. In re Miller*, 568 S.W.2d 246, 253 (Mo. banc 1978). Respondent, after 21 years of full-time practice, claims to have gone deep in debt as a result of business failure, a contemporaneous divorce, and various tax liens. Respondent apparently cooperated with federal agents in computing his delinquencies. *Cf. In re Burrus, supra* at 626.

In view of these facts, Respondent is hereby suspended indefinitely from the practice of law, with leave to apply for reinstatement six months after the date of the mandate in this case.

COVINGTON, HOLSTEIN, THOMAS and LIMBAUGH, JJ., concur.

PRICE, J., concurs in part and dissents in part in separate opinion filed.

ROBERTSON, C.J., dissents in separate opinion filed.

PRICE, Judge, concurring in part and dissenting in part.

I concur with the majority opinion that discipline is warranted against an attorney who suffered conviction because he "willfully failed to pay [federal income] taxes, although he possessed funds to do so." I disagree, however, with the discipline imposed.

The record contains no evidence that Mr. Duncan has ever failed to represent any of his clients in a proper and professional manner. Neither does the record show any harm to his clients resulting from his failure to pay taxes, other than the harm suffered by the public as a whole when one individual fails to carry his share of the tax burden.

While the majority opinion equates the failure to pay taxes with the failure to file, I would not. Failure to file involves an element of intentional concealment that does not exist in the case of an individual who has declared his liability, but has not paid. But for Mr. Duncan's admission in the plea agreement that "he possessed funds to do so", this element would be so subjective as to be nearly impossible to prove. In my opinion, Mr. Duncan's offense *barely* meets the "moral turpitude" standard, which is more normally associated with crimes of baseness, vileness or depravity.

The purpose of imposing discipline upon members of the Bar is primarily to protect the public from unsuitable practitioners, not to punish the practitioner. *In re Fahey*, 8 Cal.3d 842, 106 Cal.Rptr. 313, 505 P.2d 1369 (1973). The discipline assessed here should be tailored to that purpose.

Mr. Duncan entered into a plea agreement with the United States that allowed him to continue to work and to pay the Internal Revenue Service "all disposable income" and eventually $157,887.14. Rather than immediately suspending Mr. Duncan's license, and thereby jeopardizing his ability to support himself and to pay his tax liability, I would defer imposition of any discipline so long as Mr. Duncan fulfills his obligations pursuant to the plea agreement.

Should Mr. Duncan promptly and faithfully pay his tax obligation, we might then determine what discipline is warranted. Perhaps the six-month suspension would appear too harsh in that circumstance. Alternatively, should he not fulfill his plea agreement, perhaps a six-month suspension would appear too lenient. In short, I believe the public would be served best by crafting discipline for Mr. Duncan that facilitates the payment of his tax debt, rather than obstructing it.

ROBERTSON, Chief Justice, dissenting.

This Court has long defined moral turpitude as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowmen or to society in general." *In re Frick*, 694 S.W.2d 473, 479 (Mo. banc 1985). Rule 5.20, the basis for the Chief Disciplinary Counsel's information, places a responsibility on this Court to impose a temporary suspension where an attorney licensed in this state is convicted of a "misdemeanor involving moral turpitude." I do not believe that failure to pay federal income tax is a misdemeanor involving moral turpitude. I respectfully dissent.

Courts across the nation have handled the interplay between federal tax law violations and moral turpitude unevenly.[1] However, while it is true that all acts of moral turpitude bring into question the actor's honesty, trustworthiness or fitness as a lawyer, it is not true that all misdemeanors rise to the level of moral turpitude.

Mr. Duncan's crime is not that he evaded his federal income tax. He did not fail to file his tax return, an act that demonstrates an intent to hide one's tax liability from the government; nor did he file a false tax return. Instead, Mr. Duncan filed his tax return and, in effect, told the government that he owed them their tribute. He simply did not pay. This is not a vile, base, or depraved act. There is no purpose to deceive or defraud. It is the act of a man who spends his resources improvidently. Such an act does not constitute moral turpitude.

I dissent for a second reason. Rule 5.20(a) provides that where an attorney is "convicted of a misdemeanor involving moral turpitude or of any felony," the lawyer must "show cause why the lawyer should not be suspended from the practice of law pending the final disposition of any disciplinary proceeding based upon such conviction." Thus, the rule provides for a temporary suspension pending further disciplinary proceedings.

Rule 5.20(b) creates an exception to the general rule of temporary suspension pending disciplinary in actions where there is an appeal.

> If the conviction is affirmed *on appeal*, ... the chief disciplinary counsel shall file with this Court a motion to discipline, ... whereupon the lawyer shall be subject to discipline by this Court without the requirement of any other proceeding.

[Emphasis added.] Rule 5.20(b) does not contemplate a summary procedure for guilty pleas. Noticeably absent is the language "when the conviction becomes final."

Aside from my disagreement with the majority's legal conclusion of moral turpitude, I do not believe Rule 5.20 can form the basis for discipline where there has been a guilty plea. One can hardly argue that the wording of Rule 5.20 is a model of clarity. Nevertheless, if one focuses on the words of Rule 5.20, it is obvious that it creates a temporary suspension from the practice of law pending: (a) the completion of a separate disciplinary proceeding under Rule 4; or (b) affirmance of a conviction following an appeal and summary disciplinary proceeding. Where there is no separate proceeding under Rule 4 and no possi-

---

1. *Compare e.g., In re Fahey,* 106 Cal.Rptr. 313, 505 P.2d 1369 (1973) (willful failure to file does not constitute per se moral turpitude); *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 374 A.2d 354 (1977) (failure to file tax does not constitute per se moral turpitude unless surrounding facts demonstrate otherwise) *with,* *e.g., Grievance Comm'n v. Pohlman,* 248 N.W.2d 833, 835 (N.D.1976) (willful failure to file federal income tax is crime involving moral turpitude); *Columbus Bar Ass'n v. Wolfe,* 70 Ohio St.2d 55, 434 N.E.2d 1096 (1982) (conviction of willful failure to file tax return results in indefinite suspension).

bility of appeal, as with a guilty plea, Rule 5.20 does not permit this Court to transform a rule designed for temporary suspension into one permitting final discipline.

I respectfully dissent.